IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAYMOND BROWN**<br><br>v.<br><br>**POLICE OFFICER HARRIS #6034, POLICE OFFICER ANDY YUN #4527, CITY OF PHILADELPHIA** | **CIVIL ACTION**<br><br>**NO. 20-5354** |

### MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                                          **March 18, 2022**

This civil rights case arises from events surrounding the arrest of Plaintiff Raymond Brown on November 3, 2018 for carrying a firearm without a license. Brown was charged with violations of 18 Pa. C.S. § 6106(a)(1) and 18 Pa. C.S. § 6108, both of which were quashed. On October 27, 2020, Brown filed the instant action against two members of the Philadelphia Police Department, Police Officers Andy Yun and Steven Harris, pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, to include false imprisonment and arrest (Count I), malicious prosecution (Count II), and failure to intervene (Count III). See Compl. (ECF 1) ¶¶ 26-45.[1] Defendants seek summary judgment on all claims. See Mot. (ECF 9). For the following reasons, the motion will be denied.

    **I.**     **Factual Background and Procedural History**[2]

---

[1]     Brown also asserted a § 1983 claim against the City of Philadelphia for having a policy and/or custom to "cover-up and avoid detection of improper and illegal police activity," and failing to train, supervise, and discipline its police officers. See Compl. ¶¶ 46-53 (Count IV). Brown has voluntarily withdrawn this claim. See Resp. (ECF 12) 9.

[2]     Unless otherwise indicated, all facts are derived from Defendants' Statement of Undisputed Facts (ECF 9-1) ("Defs.' SUF") in the light most favorable to Brown, or from the facts stated in Brown's related response and statement of additional undisputed facts (ECF 12) ("Pl.'s SUF").

On November 3, 2018, state and local authorities, to include the Philadelphia Police Department, executed a "Cease Operations" at the Lava Social Club—an establishment that authorities believed was operating and selling alcohol without a license. See Defs.' SUF ¶¶ 6-8; but see Pl.'s SUF ¶ 2 (stating that the facts underlying the government's investigation of unlicensed alcohol sales at the Lava Social Club and the execution of the "Cease Operations" are unknown to Plaintiff). At the time of the raid, Brown was at the Lava Social Club working security. See Defs.' SUF ¶ 10; Pl.'s SUF ¶ 1. The parties largely dispute the events leading to Brown's arrest.

According to Defendants, Harris—one of the police officers who assisted in the "Cease Operations"—entered Lava Social Club and approached Plaintiff, who was wearing all black. See Defs.' SUF ¶¶ 8-9. Defendants contend that Brown informed Harris that he was working as security for Lava Social Club, see id. at ¶ 9, but did not say whether he had an ownership interest in the establishment, see id. at ¶ 14. Harris learned Brown was carrying a firearm in his waist area and conducted a pat down that resulted in the removal of the firearm from Brown's person. See id. at ¶¶ 11-12; see also Mot., Ex. A-1 (Arrest Report) at 15. A check was performed to see if Brown had a license to carry a firearm, which came back negative, see Defs.' SUF ¶ 16; see also Mot. Ex. A (Yun Dep.), at 24:4-11, and Brown was arrested for carrying a firearm without a license, see Defs.' SUF ¶ 17. Yun made the determination to arrest Brown "in conjunction with . . . Harris," id. at 23:19, and was present his arrest, see Mot., Ex. A, at 6:20-22. Yun prepared Brown's arrest report. See Mot, Ex. A-1 at 15-16.

According to Brown, an officer approached him and asked whether he was carrying a firearm. See Mot., Ex. C (Brown Depo.) at 28:8-19. Brown maintains that the officer patted him down but could not feel a firearm, so then asked Brown where on his person it was located. Id. at 28:20-29:4. Brown contends that he told the officer that the firearm was located near his waist,

and the officer retrieved the gun and arrested him. Id.; Pl.'s SUF ¶¶ 3a, 6, 8. Brown disputes that he identified himself to the officer as security, or that the officer asked him any questions prior to retrieving the firearm, aside from whether he had a firearm on his person. See id. at ¶ 3a; Mot., Ex. C at 28:16-19.

Brown was charged with violations of 18 Pa. C.S. § 6106(a)(1) (carrying a firearm without a license) and 18 Pa. C.S. § 6108 (carrying an unlicensed firearm on public streets or public property in Philadelphia). See Mot., Ex. D (Information). As counsel confirmed at the hearing on March 10, 2022, Brown's charges were quashed. See also Pl.'s SUF ¶ 13. Brown initiated the instant action on October 27, 2020. See Compl. Following discovery, Defendants filed a motion for summary judgment. Brown filed a Response in Opposition (ECF 12). Pursuant to the Court's October 5, 2021 order, the parties filed supplemental briefing addressing the following questions: (1) "[w]hether or not the statutory exception to Pennsylvania's concealed firearm law at 18 Pa. C.S. § 6106(b)(6) applies to private security guards such as Plaintiff," and (2) citing Saucier v. Katz, 533 U.S. 194, 201 (2001), "[w]hether the violated constitutional right at issue was clearly established at the time of the arrest." Order (ECF 13); see Pl.'s Suppl. Br. (ECF 15); Defs.' Suppl. Br. (ECF 14).

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. At summary judgment, the Court's role is "'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the

evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)). The Court should grant summary judgment only if, "constru[ing] all facts and inferences in favor of the nonmoving party," Santini v. Fuentes, 795 F.3d 410, 419 (3d Cir. 2015), "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Peroza-Benitez, 994 F.3d at 165. To determine whether a police officer is entitled to qualified immunity, the Court conducts a two-step inquiry: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right," Davenport v. Borough of Homestead, 870 F.3d 273, 280 (3d Cir. 2017), and (2) "whether the right was clearly established, such that it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (internal quotations omitted). "Courts may begin their inquiry with either prong." Peroza-Benitez, 994 F.3d at 165. At summary judgment, the police officer as the movant has the burden of establishing an entitlement to qualified immunity. Id. "When multiple officers seek to invoke qualified immunity, we separately consider each officer's actions." Id. (citing Grant v. City of Pittsburgh, 98 F.3d 116, 122-23 (3d Cir. 1996)).

### III. Discussion

#### A. False Arrest and False Imprisonment (Count I)

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v.

4

City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures."). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Dempsey v. Bucknell Uni., 834 F.3d 457, 467 (3d Cir. 2016) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)). Probable cause determinations are informed by a totality-of-the-circumstances approach, Illinois v. Gates, 462 US. 213, 238 (1983), that is necessarily a fact-intensive inquiry, see Dempsey, 834 F.3d at 468. In a § 1983 action, whether probable cause exists is typically a question of fact that is more appropriate for a jury to resolve. Id. (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). "Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" Id. (quoting Sherwood, 113 F.3d at 401).

Defendants seek summary judgment on the ground that there is no constitutional violation because Harris had probable cause to arrest Brown for violating 18 Pa. C.S. § 6106(a)(1), which provides that "any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." Mot. 6-7. Brown counters that summary judgment is improper given the existence of "contrasting" facts as to what occurred leading up to his arrest, to include what Harris told him, and what he told Harris, prior to Harris retrieving the gun from his waistband and the subsequent arrest. Resp. 7-8.

The parties' contentions concerning whether the police officers had probable cause to arrest Brown are mired in factual disputes that preclude summary judgment. For example, Defendants state that, on the night of the arrest, Brown "did not tell Officer Harris he had an ownership interest in the 'Lava Social Club'; however, he admits he did not have an ownership interest in the 'Lava Social Club.'" Defs.' SUF ¶ 15; see also id. at ¶ 14. Viewing the facts in the light most favorable to Brown, Officer Harris seemingly did not learn of Brown's lack of ownership interest until after the arrest, and possibly not until Brown's deposition. See Mot. 7. A reasonable jury could conclude that Harris lacked probable cause to arrest Brown under § 6106(a)(1) given his failure to confirm prior to Brown's arrest whether he was an owner or proprietor of Lava Social Club.[3]

In supplemental briefing, the parties were asked to discuss, inter alia, the applicability of 18 Pa. C.S. § 6106(b)(6), which provides an exception to liability under § 6106(a)(1) for "[a]gents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties." Plaintiff argues that this exception applies because he was acting as a security guard, protecting

---

[3]    Defendants argue that Brown's reliance on § 6106(a)(1)'s "fixed place of business" exception fails as a matter of law. Mot. 8. Defendants rely on two Pennsylvania Superior Court cases—Commonwealth v. Carr, 483 A.2d 542, 543-44 (Pa. Super. Ct. 1984) and Commonwealth v. Ravenell, No. 3501 EDA 2017, 2018 WL 3946366, at *2-3 (Pa. Super. Aug. 17, 2018)—for the proposition that, in Pennsylvania, "it is well established that 'his . . . fixed place of business' in §6106(a)(1) is given its ordinary meaning, which is, the defendant must have a proprietary, controlling[,] or possessory interest in the fixed place of business." Id. Accordingly, Defendants suggest that Brown's admission after his arrest that he had no ownership interest in the Lava Social Club, or the propriety on which the Lava Social Club was operating, defeats Brown's argument that Harris and Yun knew they did not have probable cause to arrest him because he was at his place of employment working as a security guard. Id. But Superior Court decisions are not binding on matters of Pennsylvania law, and Defendants cannot otherwise point to a Pennsylvania Supreme Court decision opining on the meaning of "fixed place of business" under § 6106(b)(6). Additionally, even if Defendants' interpretation is correct in that Brown was not at his "fixed place of business" at the time of his arrest, there are sufficient factual disputes concerning the events leading to his arrest that preclude summary judgment.

valuables, while on the business premises. Pl.'s Suppl. Br. 1-3. Defendants argue that this exception does not apply because: 1) Plaintiff's position as a security guard at an illegal nightclub was not contemplated by the statute; 2) Plaintiff was not an agent/employee at the nightclub; 3) the nightclub was not a "business firm"; and 4) applying this section to the facts here would be contrary to public interest. Defs.'s Suppl. Br. 1-5.

The Pennsylvania Supreme Court has held that the exceptions pursuant to § 6106(b), including § 6106(b)(6), "are affirmative defenses that may be raised at trial." Commonwealth v. Anderson, 169 A.3d 1092, 1101 (Pa. Super. Ct. 2017) (citing Commonwealth v. Lopez, 565 A.2d 437, 440 (Pa. 1989)). The Third Circuit has held that police officers generally have no obligation to determine the applicability of affirmative defenses when assessing probable cause. See Holman v. City of York, 564 F.3d 225, 231 (3d Cir. 2009); Sands v. McCormick, 502 F.3d 263, 269 (3d Cir. 2007). However, an affirmative defense may be pertinent to the probable cause determination when it is "included in the statute setting forth the elements of the crime." Holman, 564 F.3d at 230. In such a situation, the Third Circuit has suggested that it would be529 A.2d 15

appropriate to ask as part of the analysis "whether an officer, 'acting reasonably . . . under the facts and circumstances' known to him, would conclude that the affirmative defense applied." Id. (quoting Radich v. Goode, 886 F.2d 1391, 1396 (3d Cir. 1989)). And "[i]f the answer was yes, then probable cause did not exist." Id. Here, notwithstanding the genuine disputes of material fact concerning the events leading to Brown's arrest, a determination as to the applicability of § 6106(b)(6) would require a fact-intensive inquiry into, for example, whether a reasonable officer could have concluded that the Lava Social Club qualifies as a "business firm" or whether Brown at the time was an "agent" or "employee" of Lava Social Club. See Commonwealth v. Walton, 529 A.2d 15, 17 (Pa. Super. Ct. 1987) (limiting the exception's applicability "to agents or

7

employees who are hired for the primary purpose of and whose duties are principally related to the protection of money, valuables, and property," to include "persons employed as guards, watchmen, protective patrols, and private detectives, who are required in the discharge of their duties to protect money, valuables, and property"); U.S. v. Williams, 533 F. Supp. 448, 450 (E.D. Pa. 1982) (Broderick, J.) (suggesting that defendant would meet § 6106(b)(6)'s exception if "his duties at the parking garage required him, as a condition of his employment, to protect valuables"). These are questions of fact more appropriate for a jury to resolve.

Therefore, the Court will deny summary judgment as to Count I.[4]

### B. Failure to Intervene (Count II)

Under a failure-to-intervene theory, a police officer may be directly liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). For liability to attach, the officer must have had "a realistic and reasonable opportunity to intervene" in the constitutional violation taking place. Id.

The Third Circuit has yet to extend this theory of liability to the context of false arrest or false imprisonment. See Lozano v. New Jersey, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (acknowledging that the failure-to-intervene theory in Mensinger arose in the context of excessive

---

[4] To the extent that Defendants argue that they are entitled to qualified immunity as to the false arrest claim, the Court disagrees. Assuming that Brown's Fourth Amendment right to not be arrested without probable cause was violated (which, again, is a question more appropriate for a jury to determine), the same genuine disputes of material fact that preclude summary judgment as to whether there was probable cause to arrest Brown also preclude the Court from finding at summary judgment whether Brown's right was "clearly established" at the time of the alleged violation—i.e., whether Brown's right was "sufficiently clear" that a reasonable officer in the position of Harris and Yun "would understand that what he is doing violates that right." Peroza-Benitez, 994 F.3d at 165 (citing Saucier, 533 U.S. at 202).

force). Nevertheless, at least one Court of Appeals has done so. See id. (citing Bunkley v. City of Detroit, 902 F.3d 552, 565-66 (6th Cir. 2018) (recognizing a police officer's duty "to intervene to prevent an arrest not supported by probable cause"); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that a citizen has been unjustifiably arrested[.]") (citing Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir.1982)); cf. Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012) (extending Mensinger to inmate-on-inmate attacks); but cf. Weimer v. Cnty. of Fayette, Pa., 972 F.3d 177, 190-91 (3d Cir. 2020) (recognizing that the Third Circuit has yet to extend Mensinger to "prosecutors who fail to intervene to prevent police from conducting unconstitutional investigations"). Additionally, several district courts within the Third Circuit have recognized a failure-to-intervene theory in the false arrest context. See, e.g., Goldwire v. City of Phila., 130 F. Supp. 3d 936, 942 & n.1 (E.D. Pa. 2015) ("If an officer witnesses unconstitutional conduct, and fails to intervene, he is liable under Section 1983. . . . And any reasonable officer would therefore have known that failing to intervene when his fellow officer executed a false arrest was also unconstitutional.") (Dalzell, J.); Barnett v. City of Phila., 498 F. Supp. 3d 700, 713 (E.D. Pa. 2020) (Marston, J.) (recognizing a failure-to-intervene theory in the context of false arrest); Rosado v. Dugan, No. 19-506, 2022 WL 103192, at *5 (E.D. Pa. Jan.11, 2022) (Pappert, J.) (same); but cf. Ekwunife v. City of Phila., 245 F. Supp. 3d 660, 673 (E.D. Pa. 2017) (Rubreno, J.) (declining to extend a failure-to-intervene theory "where a prosecutor allegedly failed to intervene to correct false information in an affidavit of probable cause submitted by a police officer"). The Court will likewise recognize that a police officer may be directly liable under § 1983 if he "fails or refuses to intervene" in an arrest that is alleged to have taken place without probable cause.

Neither party addresses the unsettled law within the Third Circuit as to liability under a failure-to-intervene theory in the false arrest or false imprisonment context. Rather, Defendants argue that summary judgment should be entered in favor of Harris and Yun on the ground that there was no underlying constitutional right violated when Brown was arrested and prosecuted under § 6106(a)(1). Mot. 12. Plaintiff does not respond directly to Defendant's position, instead suggesting that there are sufficient facts to show that Yun failed to intervene. Resp. 8. Given the genuine disputes of material fact concerning the sequence of events leading to Brown's arrest, see supra Section III.A, to include the roles that Harris and Yun had in the alleged false arrest and false imprisonment, the Court will deny summary judgment.

C. **Malicious Prosecution (Count III)**

To state a claim for malicious prosecution, a plaintiff must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Defendants seek summary judgment on the grounds that Brown has failed to present sufficient evidence in support of the first, third, and fourth prongs. As to the first prong, Defendants argue that they did not initiate Brown's criminal proceeding. Mot. 9-10. Plaintiff counters that Harris and Yun initiated the criminal proceeding against him by "obscuring the Philadelphia District Attorney from making an independent judgment on this matter's merits for prosecution." Resp. 8. As to the third and fourth prongs, Defendants renew their argument that

10

they had probable cause to arrest Brown, and further contend that there is no evidence in the record that they acted with malice. See Mot. 11. Plaintiff responds that Defendants have "failed to provide materially honest information" in their police reports and whether they acted maliciously or for a purpose other than bringing Brown to justice is a question for the jury. Resp. 8.

As an initial matter, although prosecutors—not police officers—generally initiate criminal proceedings, see Albright v. Oliver, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring), "an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion," Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (Brody, J) (citing, inter alia, Gallo v. City of Phila., 161 F.3d 217, 220 n.2 (1998) (recognizing "that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.")). Whether Harris or Yun provided false information in the Arrest Report as to the sequence of events leading to Brown's arrest is a fact-intensive inquiry that is inappropriate for this Court to address at summary judgment. See supra Section III.A; compare Defs.' SUF ¶¶ 18-19, with Pl.'s SUF ¶ 3; see also Mot., Ex. A-1.

Furthermore, "[m]alice has been defined as 'ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose.'" Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1999) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), abrogated on other grounds by Albright v. Oliver, 510 U.S. 266 (1994)) (emphasis omitted). "Malice may be inferred from the absence of probable cause." Id. Viewing the facts in the light most favorable to Brown, a reasonable jury could infer that Harris and Yun acted with malice if they lacked probable cause in initiating Brown's prosecution. See, e.g.,

11

Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 674 & n.8 (E.D. Pa. 2014) (Brody, J.) (denying defendant police officers motion for summary judgment on plaintiff's malicious prosecution claim because a genuine dispute of material fact existed as to whether the officers had probable cause to arrest plaintiff, from which a reasonable jury could infer malice). Again, a jury could determine that the facts do not support Brown's account of the events leading to his arrest—for example, by finding that Harris asked Brown whether he worked at the Lava Social Club. But if a jury credited Brown's version of events, then a jury could find that Harris and Yun lacked probable cause and therefore infer that they acted with malice.

The Court will deny summary judgment as to malicious prosecution.[5]

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied. An appropriate order follows.

---

[5] Defendants also argue that summary judgment as to the malicious prosecution claim is proper because "guilt [is] a defense," and Brown is guilty of violating § 6106(a)(1) by a preponderance of the evidence. Mot. 11-12 (citing Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) ("Even if the plaintiff in malicious prosecution can show that the defendant acted maliciously and without probable cause in instituting a prosecution, it is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged. This requirement can bar recovery even when the plaintiff was acquitted in the prior criminal proceedings, for a verdict of not guilty only establishes that there was not proof beyond a reasonable doubt.") (citation omitted) and Steele v. City of Erie, 113 F. App'x 456, 459 (3d Cir. Oct. 20, 2004) (non-precedential) (recognizing Hector for the proposition that "a plaintiff claiming malicious prosecution must prove actual innocence as an element of his prima facie case") (emphasis omitted)). But Hector concerned the narrow issue of what type of damages a successful § 1983 plaintiff could recover under the Fourth Amendment; it did not concern a malicious prosecution claim, and the Court specifically stated that it would not discuss the "complexities of [its] jurisprudence on malicious prosecution under § 1983." Hector, 235 F.3d at 156. Furthermore, Defendants' reliance on Steele is neither persuasive nor binding. In essence, Defendants request that the Court hold a mini trial on Brown's § 6106(a)(1) charge. This is not the role of the Court at summary judgment, and Defendants cannot point to any binding precedent on point suggesting otherwise.

BY THIS COURT:

/s/ MICHAEL M. BAYLSON

**MICHAEL M. BAYLSON**
**United States District Court Judge**

O:\CIVIL 20\20-5354 Brown v Harris\Memorandum_Motion for Summary Judgment_Brown v. City of Phila. (20-5354).docx