IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAYMOND BROWN** <br><br> v. <br><br> **POLICE OFFICER HARRIS #6034;** <br> **POLICE OFFICER ANDY YUN #4527 &** <br> **CITY OF PHILADELPHIA** | **CIVIL ACTION** <br><br> **NO. 20-5354** |

**BAYLSON, J.**                                                                                               **March 2, 2023**

### MEMORANDUM RE: MOTION FOR JUDGMENT AS A MATTER OF LAW

**I.    INTRODUCTION**

Plaintiff, a security guard at an illegal drinking establishment ("the Lava Lounge"), was arrested on November 3, 2018 because he possessed a firearm without a permit. A jury found that Plaintiff's arrest was a wrongful violation of the Fourth Amendment for which Defendants, the two arresting officers, are liable. Defendants move for judgment as a matter of law, arguing, in part, that they are entitled to qualified immunity. In the alternative, Defendants move for a new trial because of alleged errors in the Court's handling of the case.

The core legal issue relates to Pennsylvania's firearm statute, specifically 18 Pa. C.S. § 6106, which imposes criminal responsibility for carrying a firearm without a license. Two relevant exceptions could arguably permit Plaintiff to carry a firearm in his specific situation. The first exception allows Pennsylvanians to carry firearms at their "fixed place of business." 18 Pa. C.S. § 6106(a)(1). The second permits "agents, messengers, and other employees of… business firms, whose duties require them to protect moneys, valuables, and other property" to carry firearms "in discharge of such duties." 18 Pa. C.S. § 6106(b)(6). Whether an illegal

1

drinking venue, operating without a license, qualifies as a "fixed place of business" under § 6106(a)(1) or a "business firm" under § 6106(b)(6) is a novel question of Pennsylvania law has not been decided in a precedential opinion binding on the Court.[1]

As the jury ruled in favor of Plaintiff, the Court will view the facts in the light most favorable to Plaintiff. Admittedly, Plaintiff testified to significant hardship he experienced as a direct result of this incident. Yet the key question is whether Defendants' conduct is shielded by qualified immunity. This is a situation where Courts typically grant qualified immunity: when Plaintiff cannot show that a reasonable officer would be aware that his or her conduct would violate the rights of the arrested person. Despite Plaintiff's attempts to carve out a factual distinction, longstanding and binding precedent guides the Court's disposition of this motion.

For the reasons below, the Court will grant Defendants' motion on the grounds of qualified immunity.

## II. FACTUAL BACKGROUND

On November 3, 2018, state and local authorities, including the Philadelphia Police Department, enforced a "Cease Operations" order issued by the Philadelphia Department of License and Inspections against the Lava Lounge – an establishment that authorities believed was operating and selling alcohol without a license. See 10/17/2022 Trial Tr. 116:24-117:2. At the time, Plaintiff was at the Lava Social Club working as a security guard. Id. 43:17-44:13.

---

[1] Defendants cite to one appellate court case interpreting the relevant question in part. Commonwealth v. Carr, 483 A.2d 542, 543-544 (Pa. Super. Ct. 1984). That case was cited with approval in Commonwealth v. Ravenell, 2018 WL 3946366 (Pa. Super. Ct. Aug. 17, 2018). Even if the Court did consider these cases, their analysis would favor Defendants' interpretation of the statute. The Court need not reach the issue here because it will grant Defendants' motion on other grounds.

During the execution of the "cease operations" order, Defendant Harris—one of the police officers who enforced the "Cease Operations"— approached Plaintiff.  Id. 51:25-52:3.  Plaintiff informed Harris that he was working for Lava Social Club.  Id. 53:1-5.  Plaintiff also informed Harris that he was carrying a firearm.  Id.  53:4-11.  Defendant Harris told Plaintiff to have a seat in the lounge.  Id. 53:11-12.  During this time, Defendants ran a check to determine whether Plaintiff had a license to carry, which came back negative.  Id.  123:2-11.

Approximately 30 minutes later, Defendant Harris told Plaintiff to put his hands behind his back and asked whether he had a permit or an Act 235 certification.[2]  Id. 53:13-23.  Plaintiff replied that he did not.  Id.[3]  Another 30 minutes later, Harris again told Plaintiff to stand up and put his hands behind his back.  Id. 53:24-25.  Harris informed Plaintiff that the arrest was for possessing a firearm without a permit, but Plaintiff contended that he did not need one.  Id. 53:24-54:4.  Plaintiff was nevertheless arrested by Defendants.  Id. 54:5-9.

The District Attorney's Office charged Plaintiff with violations of 18 Pa. C.S. § 6106(a)(1) (carrying a firearm without a license) and 18 Pa. C.S. § 6108 (carrying an unlicensed firearm on public streets or public property in Philadelphia).  See ECF 9, Ex. D.  However, the charges against Plaintiff were ultimately quashed.  10/17/2022 Trial Tr. 57:12-21; 97:5-8.

---

[2]     Plaintiff could not recall exactly which question was asked.
[3]     The Lethal Weapons Training Act 235 provides certification to privately employed agents to carry a lethal weapon after undergoing training.  Act No. 1974-235, P.L. 705 (Oct. 10, 1974), 22 P.S. §§ 41 to 50.1.  Plaintiff has never asserted that he had a permit to carry a firearm or Act 235 card at the time.  See, e.g., 10/17/2022 Trial Tr. 96:13-17.  Further, Commonwealth v. Anderson, ruled that an Act 235 certification is not a substitute for a license to carry.  169 A.3d 1092 (Pa. Super. Ct. 2017).

### III. RELEVANT PROCEDURAL HISTORY AND TRIAL

Plaintiff filed the complaint in the instant action on October 27, 2020. ECF 1. Defendants filed an answer on November 17, 2020. ECF 3. After discovery, Defendants filed a motion for summary judgment on July 20, 2021. ECF 9. The Court denied the motion on March 18, 2022. ECF 20. A civil jury trial began on October 17, 2022 and concluded the next day. ECF 37, 39.

During the trial, Defendants raised the affirmative defense of qualified immunity (among others) in a Rule 50 motion for judgment as a matter of law. 10/17/2022 Trial Tr. 108:22-112:3. The Court took the motion under advisement. Id.

Neither party requested a specific charge or instruction regarding the § 6106 exceptions in their proposed verdict sheet or proposed jury instructions. See ECF 31, 33, 34, 36. However, the Court asked the jury to make two additional findings in its verdict sheet regarding the application of the relevant exceptions. See ECF 41. In the Court's verdict sheet, question 1(b) asked the jury to find whether Plaintiff was working in a "fixed place of business", while question 1(c) asked whether Plaintiff was "working to protect money, valuables, or other property." Id. The jury answered "yes" for both. Id.

The Court instructed the jury regarding the relevant § 6106 exceptions, including that the jury should interpret those exceptions according to the plain language of the statute. See 10/18/2022 Trial Tr. 51:12-52-15; see also id. 6:8-7:4, 9:13-10:13 (explaining the Court's rationale for its charges and instructions to the jury regarding the statutory exceptions). Plaintiff objected to neither the Court's jury verdict sheet nor the jury instructions. Id. 3:12-18 (verdict sheet), 66:23-25 (instructions). Defendants objected to the Court's inclusion of points 1(b) and 1(c) of the jury charge on that grounds that they would be confusing or that the Court should

4

define the fixed place of business exception to require an ownership interest in line with the holding of Commonwealth v. Carr. See id. 3:20-5-8, 77:17-78:15; see also Carr, 483 A.2d at 543-544. The Court noted the exception but disagreed with Defendants. See 10/18/2022 4:18-7:4.

The jury raised two questions during deliberations. Id. 87:4-5. The second of these questions was as follows: "in the statement 'fixed place of business,' does that statement require the individual in question to own the business or simply work there?"[4] Id. 89:12-15. The Court declined to answer, again referring the jury to the language of the statute. Id. 89:15-91:7. Defendant maintained their prior objection that the definitions should be modified in accordance with Commonwealth v. Carr. Id. 77:17-78:15.

On October 18, 2022, the jury found that Plaintiff was working in a "fixed place of business" and was "working to protect money, valuables, or other property." ECF 41. The jury found in favor of the Plaintiff on the counts of false arrest and failure to intervene by Officer Yun only. Id. However, the jury found for Defendants on the counts of malicious prosecution and failure to intervene by Officer Harris. Id. The jury found damages in the amount of $8,840 against each Defendant and the Court entered judgment in favor of Plaintiff. ECF 40, 41.

Defendants filed the instant motion for judgment as a matter of law on November 2, 2022. ECF 49. Plaintiff filed a response on December 5, 2022. ECF 54. Defendants filed a reply on December 12, 2022. ECF 55. Plaintiff filed a sur-reply on December 19, 2022 without

---

[4] The first jury question regarding illegal search under the Fourth Amendment is not relevant to the issues reached by the Court here.

moving to do so ("Sur-reply"). ECF 56. The Court held oral argument on the instant motion on January 26, 2023. ECF 58.

IV.  **LEGAL STANDARD**

Rule 50 of the Federal Rules of Civil Procedure provides that after a jury trial, a court may grant a motion for judgment as a matter of law if it determines that "a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on that issue," and that, without a favorable finding on that issue, the party cannot maintain his claim under controlling law. Fed. R. Civ. P. 50(a)(1). In determining whether to grant judgment as a matter of law, the Court "must view the evidence in the light most favorable to the non-moving party and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'" Glenn Distribs. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 299 (3d Cir. 2002) (quoting Mosley v. Wilson, 102 F.3d 85, 89 (3d Cir. 1996)). Indeed, a court may grant judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." LePage's, Inc. v. 3M, 324 F.3d 141, 145-46 (3d Cir. 2003) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).

In this endeavor, "the court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury," but rather may grant a Rule 50 motion only "if upon review of the record it can be said as a matter of law that the verdict is not supported by legally sufficient evidence." Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 92 (3d Cir. 1993); see also LePage's, 324 F.3d at 146 ("Review of the jury's verdict is limited to determining whether some evidence in the record supports the jury's verdict."); Glenn

Distribs., 297 F.3d at 299 (stating that "the standard for granting summary judgment under Rule 56 'mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

V.     **DISCUSSION**

Defendants raise four arguments that they are entitled to judgment as a matter of law.

A) Defendants were entitled to qualified immunity because the right allegedly violated was not clearly established;

B) Probable cause existed and supported Plaintiff's arrest;

C) Plaintiff failed to affirmatively establish that he qualified for either § 6106 exception; and

D) Defendants were not required to consider the affirmative defenses (here, the aforementioned exceptions to § 6106) to find probable cause as a matter of law.

In the alternative, Defendants argue that they are entitled to a new trial. As the Court will grant the motion for judgment as a matter of law, the Court need not reach the arguments that a new trial is warranted.

A.     **Qualified Immunity**

Qualified immunity applies unless Plaintiff can show the following: "(1) the official[s] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct"). See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011); Grant v. City of Philadelphia, 2022 WL 11615669 at *3 (E.D. Pa. Oct. 20, 2022)(Baylson, J.). Typically, courts analyze the prongs sequentially. However, the Supreme Court held in Pearson v. Callahan that there are certain circumstances where courts should not analyze the first prong – whether a

7

violation occurred at all – if they can resolve the issue on the second prong alone. 555 U.S. 223, 236 (2009). The Third Circuit has held that district courts may do so when confronted with a constitutional question that requires clarification of a novel issue of state law to resolve. Egolf v. Witmer, 526 F.3d 104, 109–111 (3d Cir. 2008).[5] Thus, the Court will first analyze whether the relevant right was clearly established at the time of the arrest and will avoid addressing the first prong unless necessary to resolve the case.

There are two steps to determining whether a right is clearly established. The first step is to define the right at the appropriate level of specificity which "requires us to frame the right in the light of the specific context of the case, not as a broad general proposition." Jefferson v. Lias, 21 F.4th 74, 81 (3d Cir. 2021) (citing Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021)). The second step is to determine whether the right was "clearly established" at the time of the incident. Id. The standard of analysis is outlined by the Supreme Court in Anderson v. Creighton:

> The contours of the right must be sufficiently clear *that a reasonable official would understand that what he is doing violates that right*. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*.
>
> 483 U.S. 635, 640 (1987) (emphasis added).

---

[5] The jury found that there was a constitutional violation in this case. The Court's analysis does not discredit or undermine that verdict. Nevertheless, the Court does not need to determine whether there was a constitutional violation to resolve the case. As a result, the Court will decline to address it. See Pearson, 555 U.S. at 238 (citing Egolf, 526 F.3d at 110) ("A constitutional decision resting on an uncertain interpretation of state law is also of doubtful precedential importance. . . [the] underlying principle of encouraging federal courts to decide unclear legal questions in order to clarify the law for the future is not meaningfully advanced ... when the definition of constitutional rights depends on a federal court's uncertain assumptions about state law.")

This is an objective standard that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." <u>Giles v. Davis</u>, 427 F.3d 197, 203 (3d Cir. 2005) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).

### 1. Definition of the Right

First, the Court will define the relevant right. While Plaintiff alleges a constitutional injury of arrest without probable cause, whether probable cause existed here depends entirely on interpretation of the underlying state statute. It is undisputed that arrest without probable cause violates constitutional rights. Thus, the relevant right to be free from arrest would be clearly established if there was no probable cause here under settled Pennsylvania law at the time of arrest. The Court will therefore frame the right as follows: the right to be free from arrest when possessing a firearm in the course of employment by an illegal enterprise in Pennsylvania.[6]

### 2. The Right Was Not Clearly Established under Existing Law

Second, the Court will determine whether that right was clearly established. If it is clear that the statutory term "business firm" or "fixed place of business" includes sites of illegal trade, the right was clearly established.[7] But based on the Court's research, whether a site of illegal

---

[6] Plaintiff urges the Court to use an alternative framing of the right: the right to be free from arrest when a security guard possesses a concealed firearm without a permit at the location he was hired to protect. Resp. 11-12. This framing glosses over crucial context: that the "location" in question was an illegal operation and that the relevant statute might only protect lawful "business firms" and "fixed places of business."

[7] There is also a question of fact regarding Plaintiff's formal employment status with the Lava Lounge and whether he qualifies as an agent or employee of the Lava Lounge under 18 Pa. C.S. §6106(b)(6). Plaintiff did not request a jury instruction about this issue, but the Court explicitly charged the jury that one exemption (§ 6106(b)(6)) shielded "agents, messengers, and other employees of common carriers whose duties require them to protect monies, valuables, and other property in the discharge of… such duties." 10/18/2022 Trial Tr. 52:6-13. Thus, the jury was instructed to consider the language of the exception in its entirety, including the "agent… and employee" language.

The Court need not resolve this issue because the unsettled question of whether the Lava

trade qualifies as a "business firm" or a "fixed place of business" under § 6106 remains novel question of state law on which this Court could find no binding precedent. The Court has noted this consistently throughout these proceedings, and both parties have agreed, Plaintiff emphatically so. See Sur-reply at 4 ("There has never been a contention, by the Plaintiff this matter did not arise in a novel area of law.").

This novel legal question is fatal to Plaintiff's case. Plaintiff cannot maintain that it was clearly established that he was protected under a statute while conceding that the applicability of the statute in this context is an unsettled question of law. By definition, rights based on unsettled law cannot be clearly established.[8] Thus Defendants are entitled to qualified immunity. See also Adamo v. Dillon, 900 F. Supp. 2d 499 (M.D. Pa. 2012) (Rambo, J.), aff'd, 539 F. App'x 51 (3d Cir. 2013) ("Defendants would nevertheless be entitled to qualified immunity because they ejected Gill pursuant to a reasonable interpretation of Pennsylvania statutes and regulations, and they were not 'plainly incompetent' or in 'knowing violation of the law'").

---

Lounge was a "business firm" alone is enough to find that the applicability of § 6106(b)(6) was not clearly established under Pennsylvania law.

[8] Other courts have persuasively made the same common-sense analysis, including the Third Circuit. See Pollock v. The City of Philadelphia, 403 F. App'x 664, 670 (3d Cir. 2010) (NPO), ("At the time of the arrest, Pennsylvania law provided that terroristic threats must be determined from context, and the law was not so clearly established with respect to the context marking terroristic threats that [police officer] should have known that [Plaintiff's] actions did not rise to the level of violations under [the relevant statute]"). See also Kruse v. State of Hawai'i, 857 F. Supp. 741, 756 (D. Haw. 1994), aff'd sub nom. Kruse v. State of Hawai"i, 68 F.3d 331 (9th Cir. 1995) ("Common sense dictates that a right cannot be both 'clearly established' and 'previously undecided' [as an issue of first impression under state law] for qualified immunity purposes."); May v. Sanna, No. CIV. 09-3253 RMB/AMD, 2012 WL 1067686 at *10, n15 (D.N.J. Mar. 29, 2012) (citing Couden v. Duffy, 446 F.3d 483, 501–02 (3d Cir.2006) (Weis, J., dissenting)) ("The second step of the qualified immunity analysis often turns on 'whether a novel issue or a well-established interpretation of the law is in controversy. If there is doubt about the state of the law, the officer is granted immunity.'").

Plaintiff admits that the relevant issues of statutory interpretation are novel, but instead asks the Court to thread the needle. Even if interpretation of the exception remains unsettled, Plaintiff contends that it was nevertheless sufficiently clear that Plaintiff was covered by an exception that Defendants were unreasonable and plainly incompetent for arresting him.[9] Plaintiff argues that (1) no language in the statute (or subsequent case law) insists on adherence to licensing requirements or that the business must be legal and therefore the police should not have read such a requirement to exist; and (2) the Lava Lounge was, arguably, otherwise a legitimate business. In short, Plaintiff argues that the circumstances and the plain language of the statute made Defendants' interpretation of the statute unreasonable.

---

[9] Plaintiff has not argued that Defendants acted with deliberate intent to violate Plaintiff's rights. No evidence or testimony was presented at trial suggesting that Defendants willfully and deliberately violated Plaintiff's rights. No references to intentional or willful violation by Defendants appear in Plaintiff's briefings and oral arguments or Plaintiff's point for charge. In fact, Plaintiff's counsel argued the opposite in his closing argument during trial. See 10/18/2022 Trial Tr. 16:15-23. ("[Plaintiff's Counsel:] What Mr. Brown testified to, what Officer Harris testified to, what Officer Yun testified to was the same thing, was essentially the same, and all three persons are credible. The issue here is the misapplication of the law and the exceptions to the law by the defendants. So these officers essentially made a mistake at their job."); 10/18/2022 Trial Tr. 19:12-17 ("[Plaintiff's Counsel:] So I ask that when you [the jury] consider the facts in this case you consider that all three individuals had told - - had told the truth, and that ultimately what happened here is that the police tragically misapplied the law and the exceptions that cover a person from not having to have a firearms license . . .").
    The closest Plaintiff comes to suggesting that a willful violation took place here is that the decision to arrest was made knowingly and that the officers knew that there was no explicit statutory language supporting their conduct. See Sur-reply at 4 ("Both officers knew a bar/night club selling alcohol was not a per se illegal activity and that the statutory language did not have any requirement an otherwise legal business needs to be licensed in order for the exemptions to be applicable. The Officers jointly made their decision to arrest Plaintiff knowingly and without probable cause.") None of this establishes that Defendants *actually* knew the Lava Lounge was a "business" under the statute and arrested Plaintiff anyway.
    Furthermore, the jury found that both Defendants were not guilty of malicious prosecution. ECF 41. A key element of malicious prosecution is that "[D]efendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). This jury finding is no substitute for a finding that no willful violations took place, but it is notable nevertheless.

The Supreme Court has held that the shield of qualified immunity only fails when "in the light of pre-existing law the unlawfulness [of the official's conduct] [is] apparent." Anderson, 483 U.S. at 640.  Here, no Pennsylvania precedent binding on the Court has settled whether Defendants' conduct was unlawful or not.  It cannot be said that the unlawfulness of the arrest was apparent when the underlying law was unsettled.  This is sufficient for the Court to grant qualified immunity.  However, the Court is mindful that granting the motion here will overturn the jury's judgment for Plaintiff.  Therefore, the Court will analyze whether Defendants were plainly incompetent in their interpretation of the exceptions in these circumstances to reinforce its conclusion that qualified immunity is appropriate.

### 3. Defendants' Interpretation of § 6106 was Not Plainly Incompetent

As a preliminary matter, the threshold for denying qualified immunity based on Defendants' purportedly wrongful understanding of the statute is very high.  The officers will only be liable if they were "plainly incompetent" or "willful" in their violations.  City of Tahlequah, Oklahoma, et al. v. Austin P. Bond, 142 S.Ct. 9, 11 (2021) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, it is specifically Defendants' statutory interpretation that Plaintiff argues was plainly incompetent.  See supra note 9 (quoting Plaintiff's assertions during closing argument at trial that Defendants had simply made tragic mistake of interpretations).  The Third Circuit has repeatedly emphasized that police officers, who lack legal training, cannot reasonably be expected to resolve complicated questions of law or statutory interpretation.  Holman v. City of York, PA, 564 F.3d 225, 231 (3d Cir. 2009).  Thus, the standard for this Court to find that Defendants were plainly incompetent for their statutory interpretation – in the absence of Pennsylvania precedent instructing them otherwise – is *exceedingly* high.  For the Court to hold

12

that the police officers' understanding of the statute was plainly incompetent, the Court would have to find beyond a reasonable doubt that Plaintiff's interpretation of the statute is correct and that any interpretive mistake by the officers was not reasonable. See Malley, 475 U.S. at 341 ("If officers of reasonable competence could disagree on this issue, immunity should be recognized"); Giles, 427 F.3d at 203 (noting that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.").

Defendants' conduct, as well as their interpretation of the statute, does not come close to "plain incompetence" or "willful" violation of law. The Court need not decide what the *correct* interpretation of the relevant § 6106 exceptions is, as state law questions of first impression are best suited for disposition in state court. However, there are several reasons that a reasonable officer would not be plainly incompetent for believing the statute did not apply here:

- How to apply the key statutory terms of the relevant § 6106 exceptions when the supposed "business" is illegal has not been decided by the Pennsylvania Supreme Court, Third Circuit, or Supreme Court.
- Despite Plaintiff's insistence that the plain language of the statute contradicted Defendants' interpretation, it is unclear from the statutory phrases themselves – "fixed place of business" or "business firm" – whether a "business" must be a legitimate business to be covered or if any site of trade – illegal or not – would qualify.[10] The legislature's chosen statutory terms "fixed place of business" and

---

[10] Plaintiff instead relies on the absence of specific statutory language addressing legality or licensure requirements as proof that it was unreasonable to believe such requirements exist and that the officers had "created additional requirements which never existed." Resp. at 14. The

- "business firm" are more specific than general terms such as "place of employment." The Court disagrees that only plainly incompetent officers could believe an illegal sales location is not a "business."

- Common sense suggests that the exceptions to the firearm statute are not intended to protect an illegal enterprise. The Court doubts that the legislature intended the exception to the firearm statute to provide a legal shield to individuals *by virtue* of their involvement in illegal dealings.[11]

- There is no dispute that the Lava Lounge was an illegitimate operation that officers were actively shutting down when they made the arrest.[12]

- Pennsylvania courts typically hold that exceptions to § 6106 should be narrowly construed.[13] Interpreting the relevant statutory phrases narrowly would likely limit them to legitimate businesses.

The question is whether it was plainly incompetent for Defendants to believe that the relevant exceptions did not cover an illegal enterprise. Here, not only is the question of Pennsylvania law undecided, but there are reasonable arguments supporting the officers' interpretation of the statute. Defendants' interpretation was not "plainly incompetent" and it is

---

lack of affirmative, explicit statutory language supporting one interpretation of *other* language within the statute does not make that interpretation invalid.

[11]   See also Com. v. Walton, 529 A.2d. 15, 17 (Pa. Super. Ct. 1987)("We are instructed, in our search for the intent of the legislature, to presume that the legislature did not intend an absurd result [from our interpretation of §6106]").

[12]   Plaintiff characterizes the Lava Lounge as operating in an "otherwise regulated and legitimate area of business, bars and night clubs" that simply lacked licensure or had a licensure lapse. Resp. at 14. A business is not legitimate just because it *would* otherwise be legal but for laws and regulations to the contrary.

[13]   See, e.g., Com. v. Carr, 483 A.2d 542, 545 (Pa. Super. Ct. 1984) ("We agree with the great weight of authority from other jurisdictions that limits the right of individuals to carry concealed firearms on the job site without a license. The public would not be served by permitting millions of employed Pennsylvanians to carry a loaded pistol on the job.").

far from clear that a reasonable officer would know that he was violating Plaintiff's rights by making the arrest.[14]

### 4. Defendants Investigated Adequately Prior to the Arrest

As an alternative argument that Defendants were plainly incompetent, Plaintiff argues that Defendants made the arrest without adequately investigating whether probable cause existed.[15] Plaintiff insists that a reasonable officer would have inquired about "whether the Lava Lounge was Plaintiff's fixed place of business, and/or whether Plaintiff was employed by a business firm to protect moneys, valuables, and other property." Resp. at 12. Plaintiff also argues that Defendants could have merely confiscated (or as Plaintiff states "vouchered") Plaintiff's weapon and sought a legal opinion instead of immediately arresting Plaintiff. Resp. at 15.

Both assertions have the same flaw: they rely on the assumption that Defendants knew – or should have known – that the § 6106 exceptions *could* theoretically apply to illegal enterprises i.e., that Defendants were aware that an alternative interpretation of the statute – or a novel question of law – existed at all. Defendants did not consider the Lava Lounge to be a business

---

[14] Further, the Court declines to hold Defendants to any higher standard of statutory interpretation. The Supreme Court has observed that "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson v. Layne, 526 U.S. 603, 618 (1999). The same principle applies here. Since the Court has been unable to determine what the "correct" interpretation of the statute is from any binding precedent, it will not hold that a reasonable officer should have known what was the "correct" interpretation.

[15] Plaintiff's testimony suggests that he had been in similar situations in the past and never faced arrest. 10/17/2022 Trial Tr. 55:10-56:25. But the question is whether Defendants' conduct was sufficiently incompetent (or willful in violating Plaintiff's rights) to deny them qualified immunity, not what they could have and should have done. See Grant, 2022 WL 1615669 at *15 (considering "alternatives that could have been employed by police… under a traditional 'could have/should have' argument" but concluding that such hindsight was not a valid reason to find that arrest was unlawful).

because it had no licenses or permits. See 10/17/2022 Trial Tr. 130:20-131:22; 159:2-9 ("We had the information that it was not a business before we went in there."). There was no reason to ask further questions that would not alter that conclusion, as Defendant Harris articulated on cross-examination:

> [Plaintiff's Counsel]: Did at any point in any of the questions you asked, did you ask Mr. Brown if this was his fixed place of business?
>
> Defendant Harris: I would not have asked that question, no. . . because it was not a business, I would not have asked him that question.
>
> [Plaintiff's Counsel]: Okay. So your determination of what a business is is based on what L[icense] and I[nspection] says?
>
> Defendant Harris: That's right. L[icenses] and I[nspection] lets us know if it's a legitimate licensed business in the City of Philadelphia.

Id. 159:17-160:6

Even if the Court were not to credit this undisputed testimony,[16] both parties affirmatively assert that Defendants knew of the relevant exceptions.[17] Under their interpretation of these exceptions, Defendants already had sufficient reasonable basis to find probable cause to arrest Plaintiff, since he did not qualify for any other exception that would allow him to possess a concealed firearm. Once Defendants had that reasonable basis, they were "not required to undertake an exhaustive investigation in order to validate the probable cause that, *in [their] mind[s]*, already existed." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790, n8 (3d Cir.

---

[16] Plaintiff has never argued the opposite - that Defendants actually believed that the Lava Lounge was a business covered by a relevant § 6106 exception. Further, Plaintiff asserted during his closing argument at trial that all three witnesses – namely, Plaintiff and both Defendants – "were credible" and had "told the truth." 10/18/2022 Trial Tr. 16:15-19, 19:12-14.

[17] Plaintiff has not disputed Defendants' testimony on this point. See Resp. at 12 ("These officers both knew about the potential Section 6106 exemptions"); Sur-reply at 3 ("Both officers knew the statute provided exemptions for carrying a firearm at a place of business and while protecting valuables").

2000)(emphasis added). Thus, under Defendants' interpretation of the statute – which was not plainly incompetent - they had fulfilled their obligations to conduct an adequate investigation.

None of Plaintiff's arguments change that the arrest was based on Defendants' reasonable understanding of unsettled Pennsylvania law that was not plainly incompetent or a willful violation of Plaintiff's rights. Therefore, Defendants are entitled to qualified immunity.

### B. Defendants' Remaining Arguments for Judgment as a Matter of Law

Defendants assert three other grounds that it is entitled to Judgment as a Matter of Law. Although the Court will discuss these briefly, it need not decide any of them to support its decision in this case.

#### 1. Whether Probable Cause Existed

Deciding whether probable cause existed here is tantamount to deciding whether a there was a constitutional violation based on an uncertain issue of state law. The jury found in their verdict sheet that Plaintiff was arrested without probable cause. ECF 41. However, since the qualified immunity analysis is dispositive, the Court need not ask whether that finding was supported by legally sufficient evidence. Accordingly, the Court follows the principle of constitutional avoidance and declines to do so here. See Egolf, 526 F.3d at 110 ("[The] underlying principle of encouraging federal courts to decide unclear legal questions in order to clarify the law for the future is not meaningfully advanced ... when the definition of constitutional rights depends on a federal court's uncertain assumptions about state law.").

#### 2. Whether Plaintiff Proved that a Relevant § 6106 Exception Applied

For the similar reasons, the Court need not (and declines to) determine whether Plaintiff was protected by § 6106(a)(1) or § 6106(b)(6), even though the jury found in the verdict sheet

that the Lava Lounge was a fixed place of business. ECF 41. Since the officers are entitled to qualified immunity, the Court need not reach the unclear state law question underlying this case.

### 3. Whether Defendants Needed to Investigate Affirmative Defenses

As in their summary judgment motion, Defendants again raise the argument that the officers should not have been required to analyze whether the affirmative defenses, namely the statutory exceptions of § 6106, applied. As only the application of a § 6106 exception could make Plaintiff's arrest wrongful, the verdict would – under Defendants' theory – be faulty as a matter of law.

However, affirmative defenses may be pertinent to the probable cause determination when included in the statute setting forth the elements of the crime. Holman, 564 F.3d at 230. In such circumstances, the Third Circuit held that the courts should ask "whether an officer, 'acting reasonably . . . under the facts and circumstances' known to him, would conclude that the affirmative defense applied." Id. (quoting Radich v. Goode, 886 F.2d 1391, 1396 (3d Cir. 1989)). The other precedential decisions cited by Defendants do not address this holding and are therefore inapplicable.

### C. Motion for a New Trial

Since the Defendants will be granted judgment as a matter of law, there is no need for the Court to address Defendants' arguments that a new trial is warranted.

## VI. CONCLUSION

This case is uncommon. At trial, Plaintiff testified that he was not aware the Lava Lounge was not a legitimate business operating with a license. Thus, Plaintiff may have simply

been unfortunate that his employer turned out to be unlicensed, which resulted in considerable hardship for him.

The question, however, is whether Defendants' conduct disqualifies them from receiving qualified immunity. Despite the jury's finding of liability, the Court concludes that qualified immunity must be granted. Qualified immunity protects officers when the law underlying the alleged violations is not clearly established. It is undisputed that there was a novel issue of state law underlying the question of whether probable cause existed. The Court disagrees that any reasonable officer – without applicable Pennsylvania case law to guide them – would inevitably read the narrow "business firm" or "fixed place of business" exceptions to Pennsylvania's firearm statute to offer protection to individuals because of their involvement in illegal trade.

Accordingly, the relevant right was not clearly established and Defendants are shielded by qualified immunity. The Court will therefore grant Defendants' motion, reverse the judgment for the Plaintiff, and enter judgment for Defendant.